1                    UNITED STATES DISTRICT COURT

2                   SOUTHERN DISTRICT OF CALIFORNIA

3

4 ODYSSEY WIRELESS, INC.,,          )  Case No. 15CV1735-H(RBB)
                                    )
5            Plaintiff,             )  San Diego, California
                                    )
6 vs.                               )  Friday,
                                    )  December 4, 2015
7 APPLE, INC.,                      )  10:30 a.m.
                                    )
8            Defendant.             )
  _____  )
9 ODYSSEY WIRELESS, INC.,           )  Case No. 15CV1738-H(RBB)
                                    )
10           Plaintiff,             )
                                    )
11 vs.                              )
                                    )
12 SAMSUNG ELECTRONICS CO., LTD,    )
   et al.,                          )
13                                  )
             Defendants.            )
14 _____  )
   ODYSSEY WIRELESS, INC.,          )  Case No. 15CV1741-H(RBB)
15                                  )
             Plaintiff,             )
16                                  )
   vs.                              )
17                                  )
   MOTOROLA MOBILITY, LLC.,         )
18                                  )
             Defendant.             )
19 _____  )

20

21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Echo Reporting, Inc.*

ii

1   ODYSSEY WIRELESS, INC.,          )   Case No. 15CV1743-H(RBB)
                                     )
2            Plaintiff,              )
                                     )
3   vs.                              )
                                     )
4   LG ELECTRONICS USA, INC.,        )
    et al.,                          )
5                                    )
             Defendants.             )
6   _____      )


7

8              TRANSCRIPT OF TELEPHONIC MOTION HEARING
               BEFORE THE HONORABLE MARILYN L. HUFF
9                   UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For Odyssey Wireless, Inc.:   JOHN B. CAMPBELL, ESQ.
                                  LINDSAY M. LEAVITT, ESQ.
12                                McKool Smith
                                  300 West Sixth Street
13                                Suite 1700
                                  Austin, Texas 78701
14                                (512) 692-8730

15  For Apple, Inc.:              BENJAMIN G. DAMSTEDT, ESQ.
                                  LOWELL D. MEAD, ESQ.
16                                TIMOTHY S. TETER, ESQ.
                                  Cooley, LLP
17                                3175 Hanover Street
                                  Palo Alto, California 94304
18                                (650) 843-5000

19                                ANDREW WINSTON SONG, ESQ.
                                  Apple, Inc.
20                                1 Infinite Loop
                                  Cupertino, California 95014
21
    For Samsung Electronics Co.,  EVAN M. MCLEAN, ESQ.
22    Ltd., et al.:               CHRISTOPHER W. KENNERLY, ESQ.
                                  Paul Hastings, LLP
23                                1117 South California Avenue
                                  Palo Alto, California 94304
24                                (650) 320-1800

25

*Echo Reporting, Inc.*

iii

1   APPEARANCES:  (Cont'd.)

2   For Motorola Mobility, LLC:    AMR O. ALY, ESQ.
                                   Mayer Brown, LLP
3                                  1221 Avenue of the Americas
                                   New York, New York 10020
4                                  (212) 506-2500

5   For LG Electronics USA,        JEFFREY D. LEWIN, ESQ.
      Inc., et al.:                Sullivan, Hill, Lewin, Rez
6                                    & Engel
                                   550 West C Street, Suite 1500
7                                  San Diego, California 92101
                                   (619) 233-4100
8
                                   BRIAN A. TOLLEFSON, ESQ.
9                                  Rothwell, Figg, Ernst &
                                     Manbeck
10                                 607 14th Street, NW
                                   Suite 800
11                                 Washington, DC 20005
                                   (202) 783-6040
12
    Transcript Ordered by:         BRIAN A. TOLLEFSON, ESQ.
13
    Transcriber:                   Holly Martens
14                                 Echo Reporting, Inc.
                                   4455 Morena Boulevard
15                                 Suite 104
                                   San Diego, California 92117
16                                 (858) 453-7590

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*

1

```
1   SAN DIEGO, CALIFORNIA  FRIDAY, DECEMBER 4, 2015  10:30 A.M.

2                        --oOo--

3        (Call to order of the Court.)

4            THE CLERK:  Your Honor, may I call the case?

5            THE COURT:  Yes, you may.

6            THE CLERK:  Calling matters one, two, three and

7   four on calendar.

8            Number one on calendar, 15CV1735, Odyssey

9   Wireless, Inc. versus Apple, Inc.

10           Number two on calendar, 15CV1738, Odyssey

11  Wireless, Inc. versus Samsung Electronics Company, LTD., et

12  al.

13           Number three on calendar, 15CV1741, Odyssey

14  Wireless, Inc. versus Motorola Mobility, LLC.

15           And number four on calendar, 15CV1743, Odyssey

16  Wireless, Inc. versus LG Electronics USA, Inc., et al.

17           All foregoing matters are set for a telephonic

18  motion hearing.

19           THE COURT:  Good morning.  State your appearances.

20  First for the Plaintiff.

21           MR. CAMPBELL (telephonic):  Good morning, your

22  Honor.  This is John Campbell with McKool Smith for Odyssey

23  Wireless.

24           THE COURT:  Thank you.  And then for the Defense.

25           MR. DAMSTEDT (telephonic):  Good morning, your
```

2

1  Honor.  This is Ben Damstedt from Cooley, for Apple, and with

2  me is my partner Tim Teter.

3          MR. REZ (telephonic):  Your Honor, this is -- on

4  behalf of the LG Defendants, this is Donald Rez from

5  Sullivan, Hill, Lewin, Rez and Engel, and with me on the call

6  is Brian Tollefson from Rothwell, Figg.

7          MR. ALY (telephonic):  Good morning, your Honor,

8  this is Amr Aly of Mayer Brown, with me is Joy Lee from

9  Motorola Mobility.

10          MR. PARK (telephonic):  Good morning, your Honor.

11  This is Steve Park from Paul Hastings, on behalf of Samsung

12  Defendants, and with me is Evan Mclean, also with Paul

13  Hastings.

14          THE COURT:  Do we have all counsel now on -- that

15  have stated their appearance?

16      (No response.)

17          THE COURT:  I believe so.

18          So, there's a motion to compel.  The interrogatory

19  number six says,

20              "Identify and Claim Chart Form.

21          All portions of the specifications in

22          each earlier patent application to which

23          the patents in suit allegedly claim

24          priority that Odyssey contends,

25          discloses each element of each asserted

3

1          claim."

2   And then interrogatory number four says,

3               "To the extent Odyssey contends

4          that any secondary indicia of non-

5          obviousness apply to the alleged

6          inventions claimed in the asserted

7          claims for each such claim described in

8          detail, all evidence of any alleged long

9          felt unsolved need for the claimed

10         invention, failure of others to meet

11         such need, copying of the claimed

12         invention, any commercial success which

13         has a nexus to the claimed invention,

14         praise of the claimed invention by

15         others, skepticism of the claimed

16         invention, unexpected results of the

17         claimed invention, and all other

18         evidence of secondary factors of non-

19         obviousness, under 35 USC Section 103,

20         commonly referred to as the Graham

21         Factors (phonetic)."

22              So, after reviewing the papers in support and in

23   opposition of the motion, the Court's tentative as to

24   interrogatory number six is to grant it, except that if the

25   parties don't want to do it in claim chart form, that would

4

1 be fine.

2        But, I do believe that Plaintiff Odyssey, as a

3 Plaintiff, needs to tell facts to support the claim of

4 priority.  That's not the same as disclosing expert reports

5 at this stage.  But, it is fair for the Defendants to know

6 how does the Plaintiff claim priority.  And the Court

7 believes that that's a proper interrogatory.

8        As to the Graham Factors, the Court believes that

9 the Graham Factors should be identified.  It's not an issue

10 of burden of proof, it's an issue of answering an

11 interrogatory about the Graham Factors.  And so the Court

12 does believe that it's proper for the Plaintiff to disclose

13 information it has concerning the Graham Factors.

14        As to both of them, if additional information

15 becomes relevant, and responsive, the Plaintiff may at a

16 later point in time supplement the responses, as required by

17 law.

18        So, that's the Court's tentative.  I think then

19 with that tentative the burden may be on the Plaintiff

20 Odyssey to speak first.

21        MR. CAMPBELL:  Yes, your Honor.  Thank you.  This

22 is John Campbell for Plaintiff Odyssey Wireless.

23        Let me, if I may, take them in reverse order and

24 start with interrogatory number four.

25        I think -- I think we would need some

5

1 clarification, because we did provide in our interrogatory

2 response the factors that we would rely on, and we provided

3 all the facts that Odyssey Wireless is currently aware of

4 that support the secondary consideration factors that we

5 would rely on.

6          What we have not provided is the expert opinion

7 that would go along with that.  And the issue is whether

8 those should be provided at this stage of the case, and

9 really how they could be provided at this stage of the case

10 given the Defendants' invalidity contention.

11          Odyssey Wireless, in its interrogatory response,

12 stated that for a number of the factors that relate to

13 responding to the Defendants' invalidity contentions about

14 how the prior order fails to recognize a proposed solution,

15 how the prior order fails to suggest the claimed invention.

16 It's just very -- it's pretty much impossible to respond,

17 because Defendants' invalidity contentions raised 143

18 references, and they assert that they can do any combination

19 of any number of references in this case.  So, those

20 combinations just become astronomical.

21          So, to provide expert opinion that this stage of

22 the case, in general, given the scheduling order, seems

23 inappropriate, and certainly seems inappropriate given that

24 it's just -- it's impossible to respond to those contentions,

25 given the level of detail.

6

1          THE COURT:  Well --

2          MR. CAMPBELL:  So, again, we -- I'm sorry, go

3 ahead, please.

4          THE COURT:  So, your answer says,

5              "Plaintiff believes numerous

6          secondary considerations of non-

7          obviousness will weigh heavily against

8          defining that the claimed inventions are

9          invalid as obvious."

10         But, you only cite in the response one document,

11 Odyssey 0006163, and that's with respect to praise for the

12 systems and methods embodied by the claimed invention.

13         And then you say that,

14             "The prior art taught away from the

15         claimed inventions with particular

16         properties as claimed.  Plaintiff

17         expects to expand upon the discussion of

18         this secondary consideration of non-

19         obviousness through the use of expert

20         reports and testimony to rebut any

21         expert report or testimony submitted by

22         Defendants with respect to validity."

23         I understand that.  But, the prior art taught away

24 from the claimed invention, you need to give more information

25 about how did the prior art teach away from the claimed

*Echo Reporting, Inc.*

7

1 inventions with particular properties as claimed.  And then
2 you say,

3                 "The prior art failed to recognize
4             and/or propose solutions for the
5             particular problems solved by the
6             claimed inventions with particular
7             properties as claimed."
8 And then you don't have any facts to support that.  And then,
9 "the claimed inventions were not previously suggested in the
10 prior art."  I guess that's a negative, so I guess there
11 wouldn't -- you would -- that's probably self-contained
12 there.

13             But then,
14                 "The systems and methods
15             embodied by the claimed inventions
16             ultimately proved commercially
17             successful in the marketplace, as shown
18             by the commercial success of Defendants'
19             devices that practice the 4G LTE
20             standard."
21             Now, on that one, I would think that you would
22 have more information now beyond just your expert report
23 information.

24             And then,
25                 "There was a long felt but

8

1          unmet need for the claimed inventions,

2          as shown in teachings in the prior art,

3          through a general desire in the industry

4          for the provision of additional

5          bandwidth to mobile users and a general

6          desire in the industry for achieving an

7          increased battery performance of mobile

8          devices."

9 And then I think you need to give more specifics, or some

10 illustrative examples that you have.  If they have 132

11 combinations, then maybe you don't have to do 132

12 combinations in reverse.

13          But, I do think you need something beyond your

14 initial sort of general statement.  And that's true then,

15 also there was industry acceptance of the claims solution, as

16 shown by the adoption of the 4G LTE standard.  I think you

17 should cite to something there.  And, "others fail to arrive

18 at the invention," I guess that's probably self-explanatory.

19          So, in the entirety of your Graham Factors,

20 there's only one document that you reference.  And I think,

21 without disclosing all of your expert reports at this stage,

22 I do think you can -- you should, as Plaintiff, have more

23 specific information that would address the Graham Factors.

24          I do understand obviousness is by clear and

25 convincing evidence, and has to -- is defense to the

9

1 infringement challenge propounded by the Defendants.  At the
2 same time, they've asked you, "are you going to say that any
3 of these Graham Factors apply?"  And you say, "yes, we're
4 going to say that they all apply."  You need to do a better
5 job, to the extent you can, in providing more specific facts
6 at this stage, without prejudice to supplementing the
7 information.  And clearly you've put the parties on notice
8 that more information will come in the expert report.

9        In part, the case that you cited, it is true on
10 scheduling, these things can come up at any number of times,
11 but under our local rules we're a lay all the cards on the
12 table district, so that everybody has all the information up
13 front.  And so we don't have to wait until the fast paced
14 expert reports, where we're near the end and getting ready
15 for trial, if there's something that the defense would know,
16 and you would know by telling each other in disclosures, in
17 answers to interrogatories, this information, then that would
18 be useful for all parties to properly evaluate the case.

19        Does that help you, Mr. Campbell?

20        MR. CAMPBELL:  I want to be honest, Judge, and I
21 also want to be respectful.  It helps a bit, but, you know, a
22 lot -- when we're referring to the prior order -- you know,
23 we're referring to the prior order combination, the
24 Defendants are alleging, and it's not the number of pieces of
25 prior art, but it's the combinations which are astronomical.

10

1 Certainly for some of them, you know, it's embodied in a 4G

2 LTE standard, I mean, we can add a citation about our

3 infringement contention, if that helps.  The same for

4 industry acceptance of a 4G LTE standard.

5         But, we're really not -- there's really not any

6 cards we're trying to hold back.  We provided all the facts.

7 It's really a matter of a number of these factors relate to

8 the prior art that Defendants step forward in their validity

9 contentions.  And those combinations are just so astronomical

10 at this point it's very difficult to respond to that.  But,

11 we will take your Honor's guidance and do our best.

12        THE COURT:  Well, and so one thought, on that

13 other side is you could send an interrogatory to them saying,

14 "tell me your best five combinations of the prior art."  If

15 they can't prove obviousness by the best five, then certainly

16 the lessor combinations are not going to be very persuasive

17 either, or say, "tell me your best 10 combinations."  And

18 then they can say, "well, here's our strongest ones."  If

19 your strongest ones are not obvious, then your weakest ones

20 are not going to be obvious.  On the other hand, if your

21 strongest ones, they would say, "these are all obvious," then

22 the Graham Factors do come into play.

23        So, I think you just need more.  These are

24 judgment calls, but I think yours is bare bones more

25 conclusory statements.  And now that you know, through their

11

1 charts, what prior art references combinations they are

2 contending, then I think you can then try to either narrow

3 the field with them, or respond more, because I do think

4 they're entitled to know what things you consider to be the

5 Graham Factors.

6          MR. CAMPBELL:  Yes, your Honor.  We'll send that

7 interrogatory and we will supplement a response.

8          THE COURT:  And then I think the supplemental

9 response should be due in -- within 30 days.

10          MR. CAMPBELL:  Yes, your Honor.

11          THE COURT:  Then what about the other

12 interrogatory, anything on that?

13          MR. CAMPBELL:  So, very briefly, your Honor.  The

14 other interrogatory, it's really -- I mean, it is really a

15 matter of the stage of the case.  And if your Honor has

16 reviewed the University of Virginia case, then there's

17 probably nothing more for me to say, because that opinion is

18 only four months old, and the court pretty much analyzes the

19 exact same facts we have here.  It's close to being on all

20 fours as I've seen in an opinion.  It comes out that the

21 local rules provide for a certain procedure, and the local

22 rules provide the prior date with your infringement

23 contentions, which nobody disputes that we haven't done.  And

24 then what the University of Virginia case says is that these

25 are very -- the priority days and the 112 support, they're

12

1 intertwined, that's very obvious from the Defendants'

2 invalidity contentions where they make their case based on a

3 failure to respond and determine that doing it at this stage

4 in the case is not helpful asking a party to defend the

5 validity of its claims.  At that stage it's an orderly

6 development of the case, is what they say.  And so, they look

7 at all the opinions out there and say that the courts that

8 compel the parties to answer this kind of interrogatory, do

9 so after the parties have undergone more discovery and

10 narrowed the issues through invalidity of contentions claimed

11 construction, depositions or expert disclosures, and at the

12 end hold that it's not appropriate to compel the Plaintiff to

13 respond at that stage.  That the parties should meet and

14 confer about the appropriate time and, basically said that if

15 they can't come to an agreement, that they can file -- they

16 can re-file their motion to compel 30 days after the claim

17 construction order.

18        Given the similarities here, that case seems to

19 lay it out as -- better than I can do it, probably better

20 than I just did it.

21        THE COURT:  All right.  So, let me hear from the

22 other side on this issue.

23        MR. DAMSTEDT:  Yes, your Honor.  This is Ben

24 Damstedt for Apple.  Just a few points.

25        First, we obviously approve of your Honor's

13

1 tentative ruling, that this is information that Odyssey has,

2 and it's information that would be extremely helpful to be

3 provided early in the case.

4        So, Odyssey, as counsel has noted, provided a

5 statement in its infringement contention that each of the 140

6 claims that it has asserted in this case, are entitled to

7 priority to a specific application, the June 2005 provisional

8 application.

9        Now, in order for Odyssey to have made that

10 statement, it needed to have a basis for doing so.  And under

11 the patent law, in order to claim priority to an earlier

12 application, you have to show that each of the elements in

13 the claim was disclosed in that earlier application.  And the

14 reason for that makes a lot of sense.  A patentee is not

15 entitled to capture inventions that occurred before their --

16 before the patentee invented them.

17        So, under cases like in re: <u>Cheu</u> and the others

18 that we cited in our brief, the patentee has to come forward

19 with evidence that each of the elements, each of the claims,

20 is entitled to that earlier priority date.

21        Now, in this case what we have, and I think the

22 facts are relatively undisputed here, is that Odyssey had an

23 application, continued to add new matter over time.  You've

24 got the earliest June 2005 application, which disclosed only

25 figures one to six in the corresponding text.  You've got the

14

1  July 2005 application, which added more disclosure, so it's a

2  later disclosure than what Odyssey claims priority to, but it

3  added a bunch of new matter.  It added, you know, figure

4  seven to 15, and X corresponding to that.

5          Then the biggest addition of new matter occurred

6  in March 2008.  Several years later Odyssey added a kind of

7  entirely new embodiment that was not described in the earlier

8  application, and used, frankly the dates for what they were

9  arguing to the patent office is one of the reasons why they

10  could overcome the prior in the later industry.

11          So, there's been a large additional new matter

12  over time within Odyssey's patent.  Now, what happened in the

13  industry during that time?  The industry certainly didn't

14  stand still.  In the early 2000's and before the industry

15  developed the principles that went into the standard that

16  Odyssey now accuses of infringement.

17          In early 2005 the industry started to put together

18  committees that began to draft the standard that Odyssey now

19  uses.  And between 2005 and 2008 those committees formalized

20  those standards.  The very standards that Odyssey is now

21  accusing of infringement were formalized during the period

22  between the 2005 and the 2008 standard.

23          What that means for this case is that priority

24  date ended, becoming a very important issue.  And so it's one

25  that really deserves a control treatment and as early a

15

1 treatment as possible.

2       So, for those reasons I think we would -- we would

3 submit that the Court's tentative is correct, and that

4 Odyssey should identify the portions of the specifications

5 that it contends provide priority.

6       THE COURT:  Thank you.  And then response from

7 Odyssey.

8       MR. CAMPBELL:  Yes, your Honor.  Well, I think

9 nothing that was said there changes the <u>University of</u>

10 <u>Virginia's</u> analysis, and so I think the appropriate stage of

11 the case still applies.

12       What was not discussed there was really why this

13 matter has given Defendants' invalidity contention.  We've

14 got 143 references, very few of them can be debated, because

15 it's very difficult to parse through and figure out how

16 they're using the various references.  But, the number of

17 references that would be -- that would be determined here,

18 this would make a difference for it, is very, very few.

19       So, again, the <u>University of Virginia</u> analysis is

20 very enlightening in terms of it -- these issues are going to

21 be narrowed through procedures that the Court already had in

22 place.  The <u>University of Virginia</u> was looking at local

23 patent rules, pretty much the same as the Southern District

24 of California's patent rules, and held that this would be

25 resolved through those procedures, and that this

16

1  interrogatory was much more appropriate to be dealt with at a

2  later time, particularly after claim construction.

3           THE COURT:  Thank you.

4           MR. DAMSTEDT:  Your Honor, a few brief responses,

5  if I may.  One on the claim construction point that he just

6  raised.  One of the issues that is critical for a priority

7  date analysis is what the scope of the claims are.  If the

8  scope of the claims is construed broadly, then the patent

9  team needs to show more disclosure.  The scope of the claims

10 needs to be proportional to the scope of the disclosure.

11          So, it's certainly the case in the priority date

12 issue, maybe very well during the claim construction process.

13          And two, he mentioned, you know, 143 references.

14 Among those references are the specific standards that were

15 formalized during that time period.  So, the issue squarely

16 presents and is fairly easy to identify from the invalidity

17 contention.  We contend that the standards that they're now

18 accusing, are actually prior art to their patents.

19          THE COURT:  Thank you.  So, the Court has reviewed

20 it.  In general, once a party sends out an interrogatory, the

21 other party has a set period of time to respond to the

22 interrogatory.  The Court also has a case management

23 scheduling order that it issued September 4, 2015, that calls

24 for the completion of claim construction discovery by

25 February 11, 2016, coming right up.  We're already now in

17

1 December of 2015, and so the end of claim construction is
2 upon us.

3          So, I think it's helpful for the parties to know
4 whether there is priority or not, given the nature of the
5 suit.  It's certainly within the scope of the Court's
6 thoughts on the scheduling order.  And notwithstanding the
7 University of Virginia case, the Court has the ability to
8 issue an order compelling an answer to interrogatory once the
9 interrogatory has been propounded.  And if there's a meet and
10 confer and discussion of the parties, and analysis by the
11 Court, the Court has the right and duty to say, "no, you need
12 to do a more complete answer to that interrogatory, and not
13 wait until expert reports or other things."

14          I also agree with the defense in this respect
15 that, for example, if the case involves a situation where you
16 don't have priority as to certain matters, then it would be a
17 lower valuation.  So, I also think it would be relevant as
18 far as the parties evaluation of, is this case worthy of
19 pursuing, what are the damages that are claimed, what is the
20 scope of the claims that are being litigated?  Are some of
21 the claims subject to a motion for summary judgment because
22 of a lack of priority or new matter that was added to the
23 patents that is not the subject of a proper continuation
24 patent?

25          So, there may be a number of things that flow from

18

1  a proper answer to the interrogatory.  And as I said, with

2  respect to the other interrogatory, as well, if additional

3  information comes out, you can always move to supplement your

4  answer to the interrogatory.  But, the Court does believe

5  that the current answer that was given is insufficient, and

6  that you should -- that the Plaintiff should do a better job

7  in responding as to the claim of priority.  And that would be

8  within 30 days.

9           MR. CAMPBELL:  Your Honor, this is John Campbell

10 for Odyssey Wireless.  Just to be clear, your earlier

11 statement still holds that we need to do a better job

12 responding, but it's not required to be in chart form?

13          THE COURT:  It does not have to be in chart form.

14 All right.  Thank you very much.

15          MR. CAMPBELL:  Thank you, your Honor.

16          MR. DAMSTEDT:  Thank you, your Honor.

17          THE COURT:  So, the Court will just do a simple

18 order that says that you appeared, and that the Court orders

19 the Plaintiff to respond to interrogatory number six, not in

20 chart form, and to respond further as to interrogatory number

21 four, within 30 days.

22          And then, Plaintiff, it's up to you whether you

23 want to then have the other side pick their best

24 combinations.  But, usually on best practices, that's

25 something that, rather than litigating 132 possible

19

1 combinations of various references, it might be better for us

2 to focus on what are the most significant ones, and that

3 would save a lot of time and effort by everybody.

4          MR. DAMSTEDT:  Yes, your Honor.  We will send that

5 interrogatory out right away.

6          THE COURT:  All right.  Anything further?

7          MR. CAMPBELL:  No, your Honor.  Thank you.

8          THE COURT:  All right.  Thank you.

9          MR. DAMSTEDT:  Thank you.

10     (Proceedings concluded.)

11

12

13          I certify that the foregoing is a correct

14 transcript from the electronic sound recording of the

15 proceedings in the above-entitled matter.

16

17 /s/Holly Martens                    12/11/15
   Transcriber                         Date

18

   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

19

20

   /s/L.L. Francisco
21 L.L. Francisco, President
   Echo Reporting, Inc.

22

23

24

25