1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11
12

ODYSSEY WIRELESS, INC.,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No.:  15-cv-01735-H-RBB

**ORDER:**

**(1) DENYING WITHOUT PREJUDICE PLAINTIFF'S <u>DAUBERT</u> MOTIONS TO EXCLUDE; AND**

[Doc. Nos. 255, 257.]

**(2) DENYING WITHOUT PREJUDICE DEFENDANT'S <u>DAUBERT</u> MOTION TO EXCLUDE**

[Doc. No. 260.]

1

| | |
|---|---|
| ODYSSEY WIRELESS, INC., | Case No.: 15-cv-1738-H-RBB |
| Plaintiff, | |
| | **ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S <u>DAUBERT</u> MOTION TO EXCLUDE** |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendant. | [Doc. No. 298.] |

| | |
|---|---|
| ODYSSEY WIRELESS, INC., | Case No.: 15-cv-1743-H-RBB |
| Plaintiff, | |
| | **ORDER:** |
| v. | |
| LG ELECTRONICS U.S.A., INC.; LG ELECTRONICS MOBILECOMM U.S.A., INC., | **(1) GRANTING JOINT MOTION TO WITHDRAW PORTIONS OF PLAINTIFF'S <u>DAUBERT</u> MOTION** |
| Defendants. | [Doc. No. 288.] |
| | **(2) DENYING WITHOUT PREJUDICE PLAINTIFF'S <u>DAUBERT</u> MOTION TO EXCLUDE; AND** |
| | [Doc. No. 245.] |
| | **(3) DENYING WITHOUT PREJUDICE DEFENDANTS' <u>DAUBERT</u> MOTION TO EXCLUDE** |
| | [Doc. No. 242.] |

2

On August 15, 2016, Plaintiff Odyssey Wireless filed two <u>Daubert</u>[1] motions to exclude expert testimony in the Apple case and one <u>Daubert</u> motion to exclude expert testimony in the LG case.[2]  (15-cv-1735-Doc. Nos. 255, 257; 15-cv-1743-Doc. No. 245.) On August 15, 2016, the Defendants in each of the above three actions filed a <u>Daubert</u> motion to exclude expert testimony.[3]  (15-cv-1735-Doc. No. 260; 15-cv-1738-Doc. No. 298; 15-cv-1743-Doc. No. 242.)  On August 29, 2016, the parties filed their respective oppositions.  (15-cv-1735-Doc. Nos. 280, 283, 285; 15-cv-1738-Doc. No. 312; 15-cv-1743-Doc. Nos. 256, 261.)  On September 2, 2016, the parties filed their respective replies. (15-cv-1735-Doc. Nos. 296, 300, 307; 15-cv-1738-Doc. No. 320; 15-cv-1743-Doc. Nos. 270, 275.)

The Court held a hearing on the matter on September 12, 2016.  John B. Campbell, Kevin L. Burgess, Alison P. Adema, Lindsay M. Leavitt, Kathy H. Li, and Matthew Rappaport appeared for Plaintiff Odyssey.  Timothy S. Teter, Benjamin G. Damstedt, Dena Chen, Priya B. Viswanath, and Lowell D. Mead appeared for Defendant Apple Inc.  Evan M. McLean and Allan M. Soobert appeared for Defendant Samsung Electronics America, Inc.  Steven M. Lieberman, Michael H. Jones, and Jeffrey D. Lewin appeared for Defendant LG.[4]  For the reasons below, the Court denies Plaintiff's <u>Daubert</u> motions without

---

[1]     <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).

[2]     Odyssey initially also filed a <u>Daubert</u> motion to exclude in the Motorola case.  (15-cv-1741-Doc. No. 234.)  Odyssey subsequently withdrew that <u>Daubert</u> motion in light of Motorola's damages expert Ms. Mulhern's revised rebuttal expert report.  (15-cv-1741-Doc. Nos. 251, 252.)

[3]     Defendant Motorola also filed a <u>Daubert</u> motion to exclude expert testimony in Case No. 15-cv-1741.  (15-cv-1741-Doc. No. 241.)  However, at the hearing on the <u>Daubert</u> motions, the parties informed the Court that Case No. 15-cv-1741 has settled.

[4]     Defendant "LG" consists of LG Electronics U.S.A., Inc. and LG Electronics Mobilecomm U.S.A., Inc.

15-cv-01735-H-RBB

prejudice, and the Court denies Defendants' <u>Daubert</u> motions without prejudice.

## Background

On August 29, 2014, Plaintiff filed three separate actions for patent infringement in the United States District Court for the Eastern District of North Carolina against Defendants Apple, Samsung and LG.  (15-cv-1735-Doc. No. 1; 15-cv-1738-Doc. No. 1; 15-cv-1743-Doc. No. 1.)  In November 2014, Plaintiff filed a first amended complaint in each of the three actions against the Defendants, alleging infringement of U.S. Patent Nos. 7,881,393; 8,199,837; 8,576,940; 8,660,169; 8,855,230; and 8,879,606.[5]  (15-cv-1735-Doc. No. 37; 15-cv-1738-Doc. No. 37; 15-cv-1743-Doc. No. 30.)  On August 5, 2015, the three actions were transferred to the United States District Court for the Southern District of California.  (15-cv-1735-Doc. No. 85; 15-cv-1738-Doc. No. 92; 15-cv-1743-Doc. No. 72.)  On March 30, 2016, the Court issued a claim construction order in each of the actions.  (15-cv-1735-Doc. No. 169; 15-cv-1738-Doc. No. 178; 15-cv-1743-Doc. No. 155.)

By the present motions, Odyssey moves to exclude portions of the expert report and testimony of: (1) Apple's invalidity expert Dr. Anthony Acampora; (2) Apple's damages expert Dr. Matthew R. Lynde; and (3) LG's damages expert Dr. Keith R. Ugone.  (15-cv-1735-Doc. Nos. 278, 279; 15-cv-1743-Doc. No. 253.)  In addition, Defendants move to exclude Odyssey's damages opinions, including the expert reports and opinions of: (1) Odyssey's damages expert Mr. Roy Weinstein; (2) Odyssey's technical expert Dr. Mung Chiang; (3) Odyssey's survey expert Dr. Scott Savage; and (4) Odyssey's marketing expert Mr. Brad Armstrong.  (15-cv-1735-Doc. No. 275; 15-cv-1738-Doc. No. 307; 15-cv-1743-Doc. No. 254.)

///

---

[5]   Plaintiff no longer asserts any claims from the '169 patent.  (15-cv-1735-Doc. No. 183-19, Ex. 34.)

**Discussion**

## I.    Legal Standards

A district court's decision to admit expert testimony under <u>Daubert</u> in a patent case is governed by the law of the regional circuit.  <u>Summit 6, LLC v. Samsung Elecs. Co.</u>, 802 F.3d 1283, 1294 (Fed. Cir. 2015).  When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable."  <u>Elsayed Mukhtar v. Cal. State Univ., Hayward</u>, 299 F.3d 1053, 1063 (9th Cir. 2002); <u>see</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 150 (1999); <u>Daubert</u>, 509 U.S. at 597.  Under Rule 702 of the Federal Rules of Evidence, a court may permit opinion testimony from an expert only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The test for reliability of expert testimony is flexible and depends on the particular circumstances of the case.  <u>Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.</u>, 738 F.3d 960, 969 (9th Cir. 2013).  "To aid courts in exercising [their] gatekeeping role, the Supreme Court has suggested a non-exclusive and flexible list of factors that a court may consider when determining the reliability of expert testimony, including: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community."  <u>Messick v. Novartis Pharm. Corp.</u>, 747 F.3d 1193, 1197 (9th Cir. 2014); <u>Estate of Barabin v. AstenJohnson, Inc.</u>, 740 F.3d 457, 463 (9th Cir. 2014) (en banc).  The Ninth Circuit has stressed that this list of factors is meant to be helpful, not definitive.  <u>Alaska Rent-A-Car</u>, 738 F.3d at 969.

"Under <u>Daubert</u>, the district judge is 'a gatekeeper, not a fact finder.'  When an expert meets the threshold established by Rule 702 as explained in <u>Daubert</u>, the expert may testify and the jury decides how much weight to give that testimony." <u>Primiano v. Cook</u>, 598 F.3d 558, 564-65 (9th Cir. 2010).  "'[T]he test under <u>Daubert</u> is not the correctness of the expert's conclusions but the soundness of his methodology.'" <u>Primiano</u>, 598 F.3d at 564.  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." <u>Id.</u> (citing <u>Daubert</u>, 509 U.S. at 594, 596); <u>accord</u> <u>Summit 6</u>, 802 F.3d at 1296.  "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." <u>Alaska Rent-A-Car</u>, 738 F.3d at 969.  Further, the Ninth Circuit has explained that "Rule 702 should be applied with a 'liberal thrust' favoring admission." <u>Messick</u>, 747 F.3d at 1196.

Whether to admit or exclude expert testimony lies within the trial court's discretion. <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 141-42 (1997); <u>United States v. Verduzco</u>, 373 F.3d 1022, 1032 (9th Cir. 2004) ("We . . . have stressed that the 'trial court has broad discretion to admit or exclude expert testimony'.").  The Ninth Circuit has explained that "[a] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 982 (9th Cir. 2011).

## II.     Odyssey's <u>Daubert</u> Motions

### A.     Dr. Acampora

Odyssey moves to exclude portions of Dr. Acampora's invalidity expert report and related testimony on the grounds that Dr. Acampora failed to apply the Court's claim constructions in his invalidity expert report.  (15-cv-1735-Doc. No. 279 at 2-4.)   In response, Apple argues that it is permissible for Dr. Acampora to base his invalidity analysis on Odyssey's claim interpretations.  (15-cv-1735-Doc. No. 280 at 4-7.)

6

1    In his expert report, Dr. Acampora opines that certain prior art either anticipates or
2    renders obvious some or all of the asserted claims "under Odyssey's claim interpretations."
3    (15-cv-1735-Doc. No. 279-1, Ex. 1 ¶ 23; <u>see also</u> Doc. No. 279-3, Ex. 3 at 206-09.)
4    Odyssey argues that it is improper for Dr. Acampora to base his invalidity opinions on
5    Odyssey's claim interpretations rather than on the Court's claim constructions.  (15-cv-
6    1735-Doc. No. 279 at 2-4.)  Odyssey argues that Dr. Acampora's failure to rely on the
7    Court's claim constructions in his invalidity analysis renders his opinions inadmissible.
8    (<u>Id.</u> at 4.)

9    The Court agrees with Odyssey that "[a]ny expert testimony must adhere to the
10   court's claim constructions and must not apply alternative claim constructions."  <u>Dynetix</u>
11   <u>Design Sols., Inc. v. Synopsys, Inc.</u>, No. C 11-5973 PSG, 2013 WL 4537838, at *4 (N.D.
12   Cal. Aug. 22, 2013).  But the problem with Odyssey's argument is that Dr. Acampora's
13   reliance on Odyssey's claim interpretations is only improper if Odyssey's claim
14   interpretations are different from the Court's claim constructions.  Odyssey does not assert
15   in its motion that its claim interpretations differ from the Court's claim constructions.  To
16   the contrary, Odyssey asserts that its infringement expert Dr. Chiang's opinions properly
17   apply the Court's claim construction.  (15-cv-1735-Doc. No. 309 at 3.)  Indeed, as Odyssey
18   itself acknowledges "[n]o party may contradict the court's construction to a jury."  <u>Exergen</u>
19   <u>Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district
20   court has construed the relevant claim terms, and unless altered by the district court, then
21   that legal determination governs for purposes of trial."); <u>see also</u> <u>Markman v. Westview</u>
22   <u>Instruments, Inc.</u>, 517 U.S. 370, 372 (1996) ("[T]he construction of a patent, including
23   terms of art within its claim, is exclusively within the province of the court.").

24   Further, the Federal Circuit has noted that "nothing precludes [an accused infringer]
25   from arguing for a narrower application of the limitation on the infringement context, while
26   also arguing, in the alternative, that—if the district court were to disagree—the patent claim

27
28

7

would be so broad as to be invalid." <u>Stryker Corp. v. Zimmer, Inc.</u>, 782 F.3d 649, 658 n.4 (Fed. Cir. 2015), <u>vacated in part on other grounds</u> <u>Halo Elecs., Inc. v. Pulse Elecs., Inc.</u>, 136 S. Ct. 1923 (2016); <u>see also</u> <u>Int'l Seaway Trading Corp. v. Walgreens Corp.</u>, 589 F.3d 1233, 1239 (Fed. Cir. 2009) ("[I]t has been well established for over a century that the same test must be used for both infringement and anticipation.").  Accordingly, the Court denies Odyssey's motion to exclude the expert report and testimony of Dr. Acampora without prejudice to a contemporaneous objection at trial.

### B.    Dr. Lynde

Odyssey moves to exclude portions of Dr. Lynde's damages expert report and related testimony on the grounds that Dr. Lynde improperly relies on non-comparable licenses.  (15-cv-1735-Doc. No. 278.)  In response, Apple argues that Dr. Lynde has satisfied <u>Daubert</u>'s requirements by explaining in detail how the licenses at issue are technically and economically comparable to the hypothetical negotiation at issue.  (15-cv-1735-Doc. No. 291 at 1.)

The Federal Circuit has "held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent."  <u>Apple Inc. v. Motorola, Inc.</u>, 757 F.3d 1286, 1325 (Fed. Cir. 2014), <u>overruled by on other grounds by Williamson v. Citrix Online, LLC</u>, 792 F.3d 1339 (Fed. Cir. 2015) (en banc); <u>see also</u> <u>LaserDynamics, Inc. v. Quanta Computer, Inc.</u>, 694 F.3d 51, 79 (Fed. Cir. 2012) ("Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace."); <u>Ericsson, Inc. v. D-Link Sys., Inc.</u>, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("This court has recognized that licenses may be presented to the jury to help the jury decide an appropriate royalty award.").  The Federal Circuit "has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit."

ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010).

"[I]n attempting to establish a reasonable royalty, the 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit.'" VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1330 (Fed. Cir. 2014). "Prior licenses, however, are almost never perfectly analogous to the infringement action." Ericsson, 773 F.3d at 1227; see also VirnetX, 767 F.3d at 1330 ("[W]e have never required identity of circumstances."). "Comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them." Wordtech Sys., Inc v. Integrated Networks Sols., Inc., 609 F.3d 1308, 1320 (Fed. Cir. 2010). Further, alleging "a loose or vague comparability between different technologies or licenses" is insufficient. LaserDynamics, 694 F.3d at 79.

Damages expert testimony "relying on licenses must account for such distinguishing facts when invoking them to value the patented invention. Recognizing that constraint, however, the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." Ericsson, 773 F.3d at 1227; see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the Gemstar and Grande license agreements as well as any failure on the part of ActiveVideo's expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").

In his expert report, Dr. Lynde identifies and discusses seven different Apple licenses: the (1) Digcom, (2) Philips, (3) Philips/Sharp, (4) ICOMM, (5) SiproLab, (6) Cell and Network, and (7) Cellport licenses. (15-cv-1735-Doc. No. 278-1, Ex. 1 ¶¶ 171-201.) Odyssey argues that the Court should exclude Dr. Lynde's report and testimony related to these licenses because he has failed to present any evidence showing that the licenses are technologically comparable to the patents-in-suit. (15-cv-1735-Doc. No. 278 at 3.) The Court disagrees.

15-cv-01735-H-RBB

With respect to the Digcom, ICOMM, Cell and Network, and Cellport licenses, Dr. Lynde states in his expert report that he understands from Dr. Acampora that the licensed patents are in the same technical field as the patents-in-suit.  (15-cv-1735-Doc. No. 278-1, Ex. 1 ¶¶ 183, 188, 194, 198.)  Further, in Dr. Acampora's rebuttal expert report, he provides an explanation of why the licensed patents at issue are in the same technical field as the patents-in-suit.  (15-cv-1735-Doc. No. 291-1, Ex. 1 ¶¶ 535-44.)  Thus, Odyssey is incorrect in asserting that there is no evidence in Dr. Lynde's report as to the technological comparability between the licensed patents and the patents-in-suit.   In addition, Dr. Lynde's reliance on Dr. Acampora's opinions in forming his own opinions is permissible. "Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field.  Rule 703 explicitly allows an expert to rely on information he has been made aware of 'if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'"  Apple, 757 F.3d at 1321 (quoting Fed. R. Evid. 703) (citations omitted).  "Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field."  Id.

In its motion, Odyssey criticizes Dr. Acampora's conclusions that the licensed patents are technologically comparable to the patents-in-suit.  (15-cv-1735-Doc. No. 268 at 5-7; Doc. No. 310 at 2-4.)  But "'the test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology.'"  Primiano, 598 F.3d at 564 see Apple, 757 F.3d at 1314 ("A judge must be cautious not to overstep its gatekeeping role and . . . evaluate the correctness of conclusions.").  The degree of comparability between the patents is a "factual issue[] best addressed by cross examination and not by exclusion."  ActiveVideo, 694 F.3d at 1333; see also Ericsson, 773 F.3d at 1227 ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."); VirnetX, 767 F.3d at 1331 ("[T]hough there were undoubtedly differences between the licenses at issue and the circumstances of the hypothetical

15-cv-01735-H-RBB

negotiation, '[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject.'").  Accordingly, the Court rejects Odyssey's contention that Dr. Lynde should be precluded from relying on the Digcom, ICOMM, Cell and Network, and Cellport licenses in his damages analysis.

With respect to the Philips, Philips & Sharp, and SiproLab license, Apple argues that Odyssey's motion is moot as to these licenses because Dr. Lynde is not relying on these licenses to establish a reasonable royalty.  (15-cv-1735-Doc. No. 291 at 9-10.)  Apple explains that Dr. Lynde will only testify about these licenses to support Apple's contention that a lump-sum royalty payment as opposed to a running royalty payment is appropriate. (Id.)  In response, Odyssey argues that Apple cannot rely on noncomparable licenses for any part of its reasonable royalty analysis, including form of payment.  (15-cv-1735-Doc. No. 310 at 6-7.)  The Court disagrees with Odyssey.  Apple's reliance on these licenses to support its contention that it would receive a lump-sum payment is permissible.  The licenses are comparable for that specific purpose.[6]  Any challenge Odyssey may have to Apple's use of these licenses to establish entitlement to a lump-sum payment goes to the weight, not the admissibility of Dr. Lynde's testimony.  See Ericsson, 773 F.3d at 1227. Accordingly, the Court denies Odyssey's motion to exclude the expert report and testimony of Dr. Lynde without prejudice to a contemporaneous objection at trial.

C.     Dr. Ugone

Similar to the preceding motion, Odyssey moves to exclude portions of Dr. Ugone's damages expert report and related testimony on the grounds that Dr. Ugone improperly relies on non-comparable licenses.  (15-cv-1743-Doc. No. 253 at 1.)  Odyssey argues that

---

[6]     Odyssey's reliance on TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013) is unpersuasive.  In that case, the expert attempted to rely on the licenses at issue to establish a reasonable royalty rate, not merely the form of payment.  See id. at 1015-16.

in his damages analysis, Dr. Ugone improperly relies on patent pools and patent portfolio license agreements without accounting for the technological and economic difference between the hypothetical license at issue in this case and those licenses. (Id.)  In response, LG argues that Odyssey's motion should be denied because Odyssey's challenges to the patent pools/agreement go to the weight of Dr. Ugone's testimony, not its admissibility. (15-cv-1743-Doc. No. 268 at 1.)

In his expert report, Dr. Ugone discusses two LTE patent pools, the Sisvel and Via patent pools, and an LG LTE license agreement, the NTT Agreement.[7]  (15-cv-1743-Doc. No. 268-1, Ex. 1 ¶¶ 128-29, 178-80.)  In discussing the patent pools/agreement, Dr. Ugone explains that they involve LTE patents, and he addresses the economic comparability of the pools/agreement.  (Id. ¶¶ 128, 178-79.)  Further, Dr. Ugone relies on Dr. Valenti's testimony regarding the technical comparability of the patents.  (Id. ¶¶ 125, 129.)  Dr. Ugone's reliance on LG's technical expert Dr. Valenti's opinions in forming his own damages opinions is permissible.  See Apple, 757 F.3d at 1321.

In its motion, Odyssey criticizes the technical and economic comparability of the patent pools/agreement discussed in Dr. Ugone's report to the hypothetical license at issue in this case.[8]  (15-cv-1743-Doc. No. 253 at 3-5; Doc. No. 281 at 2-3.)  But the degree of

---

[7]      In his expert report, Dr. Ugone also discusses an LG agreement with Sisvel.  (15-cv-1743-Doc. No. 268-1, Ex. 1 ¶ 181.)  In its motion, Odyssey moves to exclude Dr. Ugone's discussion of the Sisvel agreement.  (15-cv-1743-Doc. No. 253 at 6.)  However, in his expert report, Dr. Ugone states he does not rely on that agreement in performing his reasonable royalty analysis.  (15-cv-1743-Doc. No. 268-1, Ex. 1 ¶ 181.)  Further, in its opposition, LG represents that Dr. Ugone does not intend to rely, and did not rely, on that agreement as part of his analysis and argues, therefore, that Odyssey's motion as to this agreement is moot.  (15-cv-1743-Doc. No. 268 at 1.)  In light of these representations and Odyssey's representation that it will not rely on the Sisvel agreement at trial, on September 9, 2016, the parties filed a joint motion to withdraw the portions of Odyssey's Daubert motion directed to the Sisvel agreement as moot.  (15-cv-1743-Doc. No. 288.)  Accordingly, the Court grants the parties' joint motion to withdraw this portion of Odyssey's Daubert motion as moot.

[8]      Odyssey also argues that Dr. Ugone cannot rely on the Sisvel and Via patent pools because the patents pools only represent offers to license and are not actual licenses obtained under those pools.  (15-

12

comparability is a "factual issue[] best addressed by cross examination and not by exclusion." ActiveVideo, 694 F.3d at 1333; see also Ericsson, 773 F.3d at 1227 ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."); VirnetX, 767 F.3d at 1331 ("[T]hough there were undoubtedly differences between the licenses at issue and the circumstances of the hypothetical negotiation, '[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject.'"). Accordingly, the Court denies Odyssey's motion to exclude the expert report and testimony of Dr. Ugone without prejudice to a contemporaneous objection at trial.

## III. Defendants' Daubert Motions[9]

### A. Dr. Chiang

Defendants move to exclude portions of the expert report and testimony of Odyssey's technical expert, Dr. Mung Chiang. (15-cv-1735-Doc. No. 275 at 1-6; 15-cv-1738 at 8-10.) Specifically, Defendants move to exclude Dr. Chiang's opinion that the patents-in-suit are responsible for 20% of the increase in 4G LTE uplink speed. (Id.) Defendants argue this testimony should be excluded because Dr. Chiang's 20% conclusion is mere conjecture and is connected to the data only by the *ipse dixit* of Dr. Chiang. (Id.) In response, Odyssey argues that Dr. Chiang's 20% opinion is relevant and reliable. (15-

---

cv-1743-Doc. No. 253 at 5 (citing Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1317–18 (Fed. Cir. 2011); DataQuill Ltd. v. High Tech Computer Corp., No. 08CV543-IEG BGS, 2012 WL 1284381, at *7 (S.D. Cal. Apr. 16, 2012)).) But neither of the cases cited by Odyssey actually state that an offer to license cannot be used in a reasonable royalty analysis. Odyssey has failed to provide the Court with any authority holding that an offer to license, particularly when the offer is part of a patent pool, can never be used in a reasonable royalty analysis.

[9] Defendants Samsung and LG filed nearly identical Daubert motions. (15-cv-1738-Doc. No. 307; 15-cv-1743-Doc. No. 254.) Defendant Apple filed its own Daubert motion. (15-cv-1735-Doc. No. 275.) Accordingly, in analyzing Defendants' motions, the Court will primarily cite to the briefing in Case No. 15-cv-1735 and Case No. 15-cv-1738 and only cite to the briefing in Case No. 15-cv-1743 when necessary.

cv-1735-Doc. No. 293 at 13.)

"[D]amages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc., 809 F.3d 1295, 1301 (Fed. Cir. 2015). "Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." Id.

In an effort to isolate the value attributable to the allegedly infringing features, Dr. Chiang evaluates all the factors that contribute to the increase in 4G LTE uplink speed over previous systems and opines in his expert report that the patents-in-suit are responsible for 20% of the increase in uplink speed. (15-cv-1735-Doc. No. 293-2, Ex. 6 at 38-39, ¶¶ 100-01.) Defendants criticize Dr. Chiang's opinion for being an approximation and not being supported by testing or simulation. (15-cv-1735-Doc. No. 275 at 3-5; 15-cv-1738-Doc. No. 307 at 8-9.) But in his report, Dr. Chiang explains that an approximation is necessary because a person of ordinary skill would understand that: "[i]t is impossible to exactly quantify the proportion of the increase in the data transfer rate of the LTE uplink over HSUPA that is attributable to the dynamic allocation of bandwidth."[10] (15-cv-1735-Doc. No. 293-2, Ex. 6 at 39, ¶ 101.) Further, Federal Circuit precedent only requires an "approximate value of th[e] technological contribution," not absolute precision. Ericsson, 773 F.3d at 1233; accord Commonwealth Sci., 809 F.3d at 1304; see VirnetX, 767 F.3d at 1328 ("[W]e are cognizant of the difficulty that patentees may face in assigning value to a

---

[10]    Defendants contend that Dr. Chiang should have been able to perform simulations or testing to show what impact, if any, the alleged invention has on the uplink speed of the accused products. (15-cv-1735-Doc. No. 275 at 2; see also 15-cv-1738-Doc. No. 307 at 9.) But Defendants fail to support this contention with any evidence in the record showing that such a test or simulation is possible or practical – in particular, there is no evidence from any of Defendants' technical experts stating that such a test or simulation is possible. In support of their contention, Defendants only cite to testimony from Dr. Chiang. (15-cv-1735-Doc. No. 275 at 2 n.2.) But it is Dr. Chiang's position that it is impossible to exactly quantify the increase in speed attributable to the invention. (15-cv-1735-Doc. No. 293-2, Ex. 6 at 39, ¶ 101.)

feature that may not have ever been individually sold.  However, we note that we have never required absolute precision in this task; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty.").  Accordingly, Dr. Chiang's 20% opinion is admissible, and Defendants' criticisms of that opinion are best addressed by cross-examination, not exclusion.  See Primiano, 598 F.3d at 564; Apple, 757 F.3d at 1314.

Defendant Apple also criticizes Dr. Chiang's methodology related to his 20% opinion on the grounds that he has never written about it or had it reviewed by his peers. (15-cv-1735-Doc. No. 275 at 4-5.)  But the mere fact that his methodology was not peer-reviewed or published does not require exclusion of Dr. Chiang's testimony, particular here where the fact-based nature of the opinion would make it impractical to subject the methods to peer review and publication.  See Summit 6, 802 F.3d at 1298 ("That Mr. Benoit's methodology was not peer-reviewed or published does not necessitate its exclusion.  We recognize that the fact-based nature of Mr. Benoit's damages testimony made it impractical, if not impossible, to subject the methods to peer review and publication."). "'[W]here an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's testimony.'"  Id.

Apple also criticizes Dr. Chiang's analysis for opining as to LTE as a whole rather than as to the specific Apple accused products.  (15-cv-1735-Doc. No. 275 at 5.)  In his report, Dr. Chiang states that all the accused products are compliant with the LTE standard. (15-cv-1735-Doc. No. 293-2, Ex. 6 at 6, ¶ 18.)  Thus, Apple's contention that Dr. Chiang's analysis should be based on the accused products rather than on the LTE standard is, at best, a matter for cross-examination, not exclusion.

Defendants also move to exclude Dr. Chiang's opinions and testimony regarding a PC Magazine article entitled "Fastest Mobile Networks 2014."  (15-cv-1735-Doc. No. 275

at 5-6; 15-cv-1738-Doc. No. 307 at 10.)  Defendants argue that the Court should exclude this testimony because the article is unreliable hearsay that has been criticized, and Odyssey and its experts failed to conduct their own analysis to investigate the accuracy of the article.  (Id.)  In response, Odyssey argues that Dr. Chiang may permissibly rely on the PC Magazine article because it is the kind of study that experts would consider when forming an opinion about representative network speeds.  (15-cv-1735-Doc. No. 293 at 11.)  Odyssey explains that the article offers an analysis of upload and download speeds throughout the nation, the analysis was based on over 170,000 data points, and the article was authored by PC Magazine's lead mobile analyst.  (Id.)

The Court agrees with Odyssey that Dr. Chiang's testimony about the article is admissible.  See Fed. R. Evid. 703; United States v. Cazares, 788 F.3d 956, 977 (9th Cir. 2015) ("Expert witnesses may rely on inadmissible hearsay in forming their opinions, so long as it is of a type reasonably relied upon by experts in their field.").  Further, the Court agrees with Odyssey that if Defendants wish to attack the credibility of the article or Dr. Chiang's reliance on the article based on the criticism contained in the article's commentary section or based on the testimony of Defendants' own experts, that is matter for cross-examination, not exclusion.  See Hose v. Chicago Nw. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995) ("'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'"); Apple, 757 F.3d at 1314 (explaining that evaluating the credibility of "one expert over another" is a task "solely reserved for the fact finder").  In sum, the Court denies Defendants' motions to exclude the expert reports and testimony of Dr. Chiang without prejudice to a contemporaneous objection at trial.[11]

---

[11]   Defendant Apple also argues that the Court should exclude any opinions by Dr. Chiang that contradict the Court's claim construction order for the reasons given with respect to the Galda reference

15-cv-01735-H-RBB

1      B.     Dr. Savage

2          Defendants move to exclude the expert report and testimony of Odyssey's survey

3      expert, Dr. Scott Savage.  (15-cv-1735-Doc. No. 275 at 6-14; 15-cv-1738-Doc. No. 307 at

4      10-17.)  Specifically, Defendants move to exclude Dr. Savage's survey.  (Id.)  In response,

5      Odyssey argues that Dr. Savage's survey opinions are admissible, and Defendants' survey

6      critiques are issues for the jury.  (15-cv-1735-Doc. No. 293 at 16-21.)

7          The Ninth Circuit has "long held that survey evidence should be admitted 'as long

8      as [it is] conducted according to accepted principles and [is] relevant.'"  Fortune Dynamic,

9      Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1036 (9th Cir. 2010).

10     The Ninth Circuit has explained that:

11         Treatment of surveys is a two-step process.  First, is the survey admissible?
12         That is, is there a proper foundation for admissibility, and is it relevant and
           conducted according to accepted principles?  This threshold question may be
13         determined by the judge.  Once the survey is admitted, however, follow-on
           issues of methodology, survey design, reliability, the experience and
14         reputation of the expert, critique of conclusions, and the like go to the weight
           of the survey rather than its admissibility.  These are issues for a jury or, in a
15         bench trial, the judge.

16

17     Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001); see also

18     Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey

19     methodology go to the weight given the survey, not its admissibility.").

20         In his survey, Dr. Savage employed a conjoint analysis to attempt to determine the

21     value a customer would be willing to pay for a particular characteristic of a smartphone,

22

23     _____

24     in Apple's concurrently filed motion for summary judgment.  (15-cv-1735-Doc. No. 275 at 25.)  The
       Court has denied Apple's motion for summary judgment with respect to the Galda reference.  (15-cv-
25     1735-Doc. No. 322 at 16.)  Accordingly, the Court denies Apple's motion to exclude Dr. Chiang's
       testimony on this basis without prejudice to a contemporaneous objection at trial.  Nevertheless, the
26     Court reiterates that "[n]o party may contradict the court's construction to a jury."  Exergen, 575 F.3d at
       1321.
27

28
                                          17

here the phone's upload speed.  (See 15-cv-1735-Doc. No. 293-4, Ex. 8.)  In the conclusion of his report, Dr. Savage relies on the results of his survey and Dr. Chiang's opinions to conclude that the willingness to pay for the upload speed attributable to the patents-in-suit would be $8.24.  (Id. ¶ 51.)  "[D]amages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'"  Commonwealth Sci., 809 F.3d at 1301.  Thus, Dr. Savage's opinions and his survey are clearly relevant to the issue of patent damages in these cases.  See, e.g., Microsoft Corp. v. Motorola, Inc., 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012) (finding relevant to the reasonable royalty analysis a survey that employed a "conjoint analysis" to determine what value a customer places on a particular feature of a product); see also Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1333-34 (Fed. Cir. 2009) (explaining that consumer surveys can be relevant to a reasonable royalty analysis).

Further, a conjoint analysis is a generally accepted method for valuing the individual characteristics of a product.  (See 15-cv-1735-Doc. No. 293-4, Ex. 8 ¶ 20.)  See TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1020 (N.D. Cal. 2013) ("Conjoint analysis uses customer surveys to determine 'values' for each attribute [of a product].");  Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK, 2014 WL 794328, at *16-17 (N.D. Cal. Feb. 25, 2014).  Indeed, "conjoint surveys have been admitted in multiple complex patent cases."[12]  Apple, 2014 WL 794328, at *17; see, e.g., Microsoft, 904 F. Supp. 2d at 1120; TV Interactive Data, 929 F. Supp. 2d at 1020-26.  Accordingly, Dr. Savage's opinions and his survey are admissible.

Defendants argue that Dr. Savage's survey should be excluded because it is

---

[12]      The Court does not find persuasive Defendants' reliance on Oracle Am., Inc. v. Google Inc., No. C 10-03561 WHA, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012).  In Oracle, the expert at issue used a conjoint analysis to attempt to measure market share, not a consumer's willingness to pay for a particular feature of a product.  See id. at *9-12.

18

unreliable in its design and scope, and they offer several criticisms of the survey.  (15-cv-1735-Doc. No. 275 at 6-14; 15-cv-1738-Doc. No. 307 at 10-17.)  But the Ninth Circuit has explained that challenges to the reliability, methodology, or design of a survey "go to the weight of the survey rather than its admissibility."  Clicks Billiards, 251 F.3d at 1263.  Thus, all of Defendants' challenges to the survey go to the weight of the survey, not its admissibility.

For example, Defendants argue that the survey should be excluded because the survey focuses on only certain attributes of a smartphone, and it does not specifically refer to Defendants' products.  (15-cv-1735-Doc. No. 275 at 7-10; 15-cv-1738-Doc. No. 307 at 11-12.)  But "technical inadequacies" in a survey, "including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility."  Fortune Dynamic, 618 F.3d at 1036; see, e.g., TV Interactive Data, 929 F. Supp. 2d at 1025 (rejecting challenge to survey on grounds that it tested only a portion of all the attributes of each product).  Defendants also argue that the survey should be excluded because it fails to specifically reference LTE, and it improperly focuses on high-end smartphones.  (15-cv-1738-Doc. No. 307 at 13-15; 15-cv-1743-Doc. No. 254 at 11-14.)  But again courts "have recognized that the framing of survey questions 'is generally an issue of weight, not admissibility.'"[13]  Fujifilm Corp. v. Motorola Mobility LLC, No.

---

[13]     Specifically, Defendant LG argues that that the survey impermissibly focuses on high-end smartphones even though the majority of its products do not qualify as "high-end" phones as defined by Dr. Savage.  (15-cv-1741-Doc. No. 254 at 11-12; see also 15-cv-1738-Doc. No. 307 at 13-14.)  LG explains that its expert, Dr. Ugone, calculated that 61% of LG's smartphone sales are not "high-end" smartphone sales.  (15-cv-1741-Doc. No. 254 at 12.)  But in making this contention, LG concedes that 39% of its smartphone sales are "high-end" sales.  Thus, Dr. Savage's survey is relevant, and LG's challenges to the focus of Dr. Savage's survey goes to the weight of the survey, not its inadmissibility.  See Fortune Dynamic, 618 F.3d at 1036; Fujifilm, 2015 WL 1737951, at *6.  Further, the Court notes that by providing the jury with data as to "high-end" sales versus non-"high-end" sales, the factfinder would have the ability to evaluate the weight of the survey and Dr. Savage's and Mr. Weinstein's reliance on the survey and make any further apportionments if necessary.

12-CV-03587-WHO, 2015 WL 1737951, at *5 (N.D. Cal. Apr. 8, 2015); see, e.g., id. at *6 ("That the [survey] questioned only 'mid/high tier smartphone owners' does not justify excluding [the survey expert]'s testimony."); Apple, Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2012 WL 2571332, at *10 (N.D. Cal. June 30, 2012) ("[Defendant]'s dissatisfaction with the description of the patented features in the survey likewise goes to weight, not admissibility."). Defendants also argue that the survey should be excluded because it is unclear whether the survey participants understood the questions they were being asked, specifically with regard to the term "Mbps." (15-cv-1735-Doc. No. 275 at 10-12; 15-cv-1738-Doc. No. 307 at 12-13.) But "the clarity of the survey questionnaire is a question of fact, best resolved at trial through cross examination." Microsoft, 904 F. Supp. 2d at 1120. Accordingly, the Court denies Defendants' motion to exclude the expert reports and testimony of Dr. Savage without prejudice to a contemporaneous objection at trial.[14]

C.    Mr. Armstrong

Defendants move to exclude the expert report and testimony of Odyssey's marketing expert, Brad Armstrong. (15-cv-1735-Doc. No. 275 at 24-25; 15-cv-1738-Doc. No. 307 at 20-21.) Defendants argue that Mr. Armstrong's testimony should be excluded because his opinions simply rehash marketing documents about which he has no personal knowledge. (Id.) Defendants argue that the jury can review and consider these documents for themselves without Mr. Armstrong's testimony. (Id.) In response, Odyssey argues that Mr. Armstrong's marketing opinions are admissible. (15-cv-1735-Doc. No. 293 at 21-22.) Odyssey explains that Mr. Armstrong is a Professor of Creative Brand Management with

---

[14]    In its motion, Apple also criticizes Dr. Savage's use of IDC market data in his analysis. (15-cv-1735-Doc. No. 275 at 12-13.) But Apple's challenges to the specific underling data utilized by Dr. Savage in his analysis are factual matters for the jury. See Apple, 757 F.3d at 1314 (explaining that the "'factual underpinnings of the expert's analysis'" are factual matters to be determined by the trier of fact).

15-cv-01735-H-RBB

over 35 years of industry experience, and he relied on this experience to interconnect a broad array of marketing documents to show a comprehensive marketing scheme tying 4G LTE with speed.  (<u>Id.</u> (citing Doc. No 293-1, Ex. 5 at 4-20).)

The Court agrees with Odyssey that Mr. Armstrong's opinions are admissible.  The Court does not find persuasive Defendants' reliance on <u>Johns v. Bayer Corp.</u>, No. 09CV1935 AJB DHB, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013).  (15-cv-1735-Doc. No 275 at 24.)  This is not a situation where the expert's "report offers nothing more than a factual narrative of the[] documents."  <u>Johns</u>, 2013 WL 1498965, at *28.  To the contrary, Mr. Armstrong's report provides an evaluation of Defendants' marketing based on his own experience and expertise.  (<u>See, e.g.</u>, 15-cv-1735-Doc. No. 293-1, Ex. 5 at 4-6.)

Defendant Apple also argues that Mr. Armstrong's opinions should be excluded because he opines as to the purported state of mind of others.  (15-cv-1735-Doc. No. 275 at 24.)  In support of this contention, Apple cites to the following statement from Mr. Armstrong's report:  "After my review of all the materials, including the examples cited above, it is my opinion that '4G LTE' and 'speed' have become inextricably intertwined in the minds of wireless device manufacturers, wireless carriers and consumers."  (15-cv-1735-Doc. No. 293-1, Ex. 5 at 19.)  In its opposition, Odyssey states that it does not oppose replacing that sentence with the following sentence:  "After my review of all the materials, including the examples cited above, it is my opinion that Apple has 'made speed a key part of their marketing of wireless devices with LTE connectivity.'"  (15-cv-1735-Doc. No. 293 at 22 n.22.)  Thus, Mr. Armstrong would be opining as to Apple's marketing not Apple's statement of mind, which is permissible.  Accordingly, the Court denies Defendants' motions to exclude the expert reports and testimony of Mr. Armstrong without prejudice to a contemporaneous objection at trial.

///

15-cv-01735-H-RBB

1

#### D.    Mr. Weinstein

Defendants move to exclude the expert report and testimony of Odyssey's damages expert, Roy Weinstein.  (15-cv-1735-Doc. No. 275 at 14-24; 15-cv-1738-Doc. No. 307 at 1-20.)  In each of the three cases, Mr. Weinstein employs four different approaches to calculate a reasonable royalty.  (See, e.g., 15-cv-1735-Doc. No. 293-5 ¶¶ 290-97.) Defendants challenge the admissibility of each of Mr. Weinstein's four approaches.  (15-cv-1735-Doc. No. 275 at 14-22; 15-cv-1738-Doc. No. 307 at 1-18.)

##### i.    Approach 1

Defendants argue that Mr. Weinstein's first approach should be excluded because this approach improperly relies on a 10/84 principle.  (15-cv-1735-Doc. No. 275 at 16-18; 15-cv-1738-Doc. No. 307 at 2-8.)  Defendants argue that Federal Circuit law prohibits the use of such a generalized "rule of thumb" in a patent damages analysis.  (Id.)  In response, Odyssey argues that Mr. Weinstein's 10/84 finding is admissible because it is tied to the facts of the case, and it is not an arbitrary rule of thumb.  (15-cv-1735-Doc. No. 293 at 5-6.)

"To properly carry [its] burden [of proving damages], the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'"  Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1315 (Fed. Cir. 2011).  "If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded."  Id.; see also id. at 1317 ("To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'").  In light of these principles, the Federal Circuit has rejected damages expert testimony that is based on a general, arbitrary rule of thumb, such as the 25% rule or the Nash Bargaining Solution. See, e.g., Uniloc, 632 F.3d at 1317 ("The 25 percent rule of thumb as an abstract and largely theoretical construct fails to satisfy this fundamental requirement.  The rule does not say anything about a particular hypothetical negotiation or reasonable royalty involving any

15-cv-01735-H-RBB

particular technology, industry, or party."); <u>VirnetX</u>, 767 F.3d at 1332 ("[W]e agree with the courts that have rejected invocations of the Nash theorem without sufficiently establishing that the premises of the theorem actually apply to the facts of the case at hand. The use here was just such an inappropriate 'rule of thumb.'").  The Federal Circuit has explained that a damages expert's reliance on a general rule of thumb is impermissible when the rule is "insufficiently tied to the facts of the case."  <u>VirnetX</u>, 767 F.3d at 1334; <u>see</u> <u>Uniloc</u>, 632 F.3d at 1318 ("[I]t is clear that [the damages expert]'s testimony was based on the use of the 25% rule of thumb as an arbitrary, general rule, unrelated to the facts of this case.").  The Federal Circuit has further explained that the use of such a rule is problematic when the rule "d[oes] not differentiate between different industries, technologies, or parties."  <u>VirnetX</u>, 767 F.3d at 1332.

In his expert report, Mr. Weinstein opines that the parties in the hypothetical negotiation would recognize the assumption that the top 10 percent of patents related to LTE UE represent 84 percent of the value of the UE portion of the LTE Standard.  (<u>See, e.g.</u>, 15-cv-1735-Doc. No. 293-5 Ex. 9 ¶ 206.)  The Court agrees with Odyssey that Mr. Weinstein's 10/84 finding is not an arbitrary, general rule of thumb like the 25 percent rule or the Nash Bargaining Solution.  Rather the finding is derived from "article [by Schankerman] that ascribed relative values for various patent groups in which the author found that the top 10 percent of patents related to electronics carried approximately 84 percent of all value associated with these patents."[15]  (15-cv-1735-Doc. No. 293-5 Ex. 9 ¶

---

[15]      In his expert reports, Mr. Weinstein also cites to an article by Deng that concludes that "the top 10% of electronics patents command 85% of the total attributable value."  (15-cv-1735-Doc. No. 293-5 Ex. 9 ¶ 206 n.353.)  Defendants offer several criticisms of these two articles based on their age and the patents examined.  (15-cv-1735-Doc. No. 275 at 16; 15-cv-1738-Doc. No. 307 at 3.)  But challenges to the underling evidence utilized by Mr. Weinstein in his analysis are factual matters for the jury.  <u>See</u> <u>Apple</u>, 757 F.3d at 1314 (explaining that the "'factual underpinnings of the expert's analysis'" are factual matters to be determined by the trier of fact).

15-cv-01735-H-RBB

206.)  Cf. Apple, 757 F.3d at 1325 ("We note that the general theory . . . that the first patent from a larger portfolio may, in practice, garner a larger royalty than later patents from the same portfolio, is not inherently unreliable.").  The patents-in-suit are patents related to electronics.  Further, at least one district court has approved of a damages expert's use of this 10/84 finding when attempting to value Wi-Fi standard essential patents.  See, e.g., In re Innovatio IP Ventures, LLC Patent Litig., No. 11 C 9308, 2013 WL 5593609, at *43 (N.D. Ill. Oct. 3, 2013).  Odyssey contends that the patents-in-suit are LTE standard essential patents.  (See 15-cv-1735-Doc. No. 293 at 58; Doc. No. 293-5 Ex. 9 ¶¶ 29, 207, 290-93.)  Wi-Fi and LTE are both wireless communications standards.[16]  Accordingly, Mr. Weinstein's 10/84 finding is sufficiently tied to the facts of the case to be admissible.

Defendants also challenge Mr. Weinstein's 10/84 finding on that the grounds that he has no basis for opining that the patents-in-suit would be in the top 10% of LTE-essential patents.  (15-cv-1735-Doc. No. 275 at 17-18; 15-cv-1738-Doc. No. 307 at 5-8.)  Defendants note that Mr. Weinstein offered this opinion even though he is not a technical expert.  (15-cv-1738-Doc. No. 307 at 5.)  In his expert report, Mr. Weinstein opines that the patents-in-suit would be high value patents (i.e., patents in the top 10%).  (15-cv-1735-Doc. No. 293-5 Ex. 9 ¶ 207.)  Mr. Weinstein explains that this conclusion is based on his discussions with Dr. Chiang, Odyssey's technical expert.  (Id.)  Mr. Weinstein's reliance on Dr. Chiang's opinions to form his own damages opinions is permissible.  See Apple, 757 F.3d at 1321 ("Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field.").

---

[16]     Defendants criticize Mr. Weinstein's reliance on In re Innovatio because that case involved Wi-Fi essential patents rather than LTE essential patents.  (15-cv-1735-Doc. No. 275 at 18; 15-cv-1738-Doc. No. 307 at 4.)  But the difference between Wi-Fi essential patents and LTE essential patents goes to the weight of Mr. Weinstein's testimony, not its admissibility.  See i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 852 (Fed. Cir. 2010) ("[D]isputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility.").

1    Defendants argue that Dr. Chiang's testimony is insufficient to support Mr.

2  Weinstein's 10% opinion because Dr. Chiang himself never specifically opines that the

3  patents-in-suit would be in the top 10% of LTE-essential patents.  (15-cv-1735-Doc. No.

4  275 at 17-18; 15-cv-1738-Doc. No. 307 at 5-6.)  The Court disagrees.  Although Dr. Chiang

5  never specifically opined that the patents-in-suit would be in the top 10% of LTE-essential

6  patents, Dr. Chiang described the functionality of the patents-in-suit to Mr. Weinstein and

7  told Mr. Weinstein that the patents-in-suit are important and necessary to practicing the

8  LTE standard.  (15-cv-1738-Doc. No. 307-1, Ex. 1 at 65-72; <u>see also</u> 15-cv-1735-Doc. No.

9  293-2, Ex. 6 at 38-39, ¶¶ 64, 104, 122.)  Further, Dr. Chiang's opinion that the patents-in-

10  suit are "important" is supported by his determination that the patents-in-suit are

11  responsible for 20% of the increase in LTE's uplink speed over prior systems.  (15-cv-

12  1735-Doc. No. 293-2, Ex. 6 at 38-39, ¶¶ 100-01; <u>see also</u> 15-cv-1738-Doc. No. 307-1, Ex.

13  1 at 69.)  Thus, there is sufficient evidence in the record to support Mr. Weinstein's opinion

14  that the patents-in-suit would be in the top 10% of LTE-essential patents.  <u>See</u> <u>In re</u>

15  <u>Innovatio</u>, 2013 WL 5593609, at *43 ("[T]he court has found that Innovatio's patents are

16  all of moderate to moderate-high importance to the standard, meaning that they provide

17  significant value to the standard.  Because 84% of the value in electronics patents is found

18  in the top 10% of electronics patents, the court can conclude that any patents providing

19  significant value are likely among the top 10% of all patents essential to the 802.11

20  standard.").  The credibility of that opinion and the underlying evidence are matters for the

21  jury, not the Court.  <u>See</u> <u>Apple</u>, 757 F.3d at 1314; <u>Hose</u>, 70 F.3d at 974.  Further,

22  Defendants may disagree with Mr. Weinstein's conclusion that the patents-in-suit qualify

23  as high value patents.  But "'the test under <u>Daubert</u> is not the correctness of the expert's

24  conclusions.'"  <u>Primiano</u>, 598 F.3d at 564; <u>see</u> <u>Apple</u>, 757 F.3d at 1314 ("A judge must be

25  cautious not to overstep its gatekeeping role and . . . evaluate the correctness of

26  conclusions.").

27

28

25

1    Defendants also argue that Mr. Weinstein's first approach should be excluded
2 because he improperly converts Dr. Savage's willingness to pay figures into revenue and
3 profits.  (15-cv-1735-Doc. No. 275 at 14-16; 15-cv-1738-Doc. No. 307 at 15-16.)   In
4 response, Odyssey argues that a reasonable royalty need not be based on an infringer's
5 actual revenue.  (15-cv-1735-Doc. No. 293 at 8-9.)   Odyssey further argues that the
6 willingness to pay figures, which are based on actual retail prices, reflect what customers
7 would be willing to pay, thus, establishing the incremental value attributable to the
8 invention. (Id. at 9.)  Odyssey argues that Defendants' disagreements regarding particular
9 revenue, profit, or willingness to pay figures can be addressed through cross-examination.
10 (Id.)  The Court agrees with Odyssey that Defendants' challenges are more appropriately
11 addressed through cross-examination.[17]   See Primiano, 598 F.3d at 564 ("Shaky but
12 admissible evidence is to be attacked by cross examination, contrary evidence, and
13 attention to the burden of proof, not exclusion."); Apple, 757 F.3d at 1315 ("[Q]uestions
14 regarding which facts are most relevant or reliable to calculating a reasonable royalty are
15 'for the jury.'").  Accordingly, the Court denies without prejudice Defendants' motions to
16 exclude Mr. Weinstein's first approach.

17              ii.     Approach 2

18    Defendants argue that Mr. Weinstein's second approach should be excluded because
19 this approach also relies on his 10/84 principle.  (15-cv-1735-Doc. No. 275 at 18; 15-cv-
20 1738-Doc. No. 307 at 7-8.)   The Court has rejected Defendants' challenges to Mr.
21 Weinstein's 10/84 finding in the preceding section.  Accordingly, the Court declines to

22

23 ──────────────

24 [17]     Further, the Court does not find persuasive Defendants' reliance on the unpublished decision in
   Apple, Inc. v. Samsung Elecs. Co., Ltd.  (15-cv-1738-Doc. No. 307 at 16.)  As Defendants conceded at
25 the hearing, that specific order involved a motion for a permanent injunction, not a Daubert motion.  See
   Apple, Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2014 WL 976898, at *7-9 (N.D. Cal. Mar.
26 6, 2014).

27

28

15-cv-01735-H-RBB

exclude Mr. Weinstein's second approach based on his use of his 10/84 finding.

Defendants also argue with respect to the second approach that Mr. Weinstein's reliance on the PC Magazine article should be excluded for the same reasons Dr. Chiang's testimony about the article should be excluded.  (15-cv-1735-Doc. No. 275 at 20; 15-cv-1738-Doc. No. 307 at 10.)  The Court has denied Defendants' motions to exclude Dr. Chiang's testimony, including Defendants' challenges to his reliance on the PC Magazine article.  Accordingly, the Court declines to exclude Mr. Weinstein's second approach based on his reliance on the PC Magazine article.  See Fed. R. Evid. 703; Cazares, 788 F.3d at 977 ("Expert witnesses may rely on inadmissible hearsay in forming their opinions, so long as it is of a type reasonably relied upon by experts in their field.").

Specific to Defendant Apple, Apple argues that Mr. Weinstein's second approach should be excluded because his opinion rests on the assumption that the price difference between cellular-enabled iPads and WiFi-only iPads results primarily from LTE.  (15-cv-1735-Doc. No. 275 at 18-19.)  Apple further argues that his opinion also rests on the faulty assumption that the royalty rate for iPads should apply equally to iPhones, even though they are different products.  (Id. at 19-20.)  But disagreements with the factual assumptions underlying an expert's conclusions "go to the weight to be afforded the testimony and not its admissibility."  ActiveVideo, 694 F.3d at 1333.  Accordingly, the Court denies without prejudice Defendants' motions to exclude Mr. Weinstein's second approach.

### iii.    Approach 3

Defendants argue that Mr. Weinstein's third approach should be excluded because it relies on Dr. Savage's inadmissible survey.  (15-cv-1735-Doc. No. 275 at 20; 15-cv-1738-Doc. No. 307 at 10.)   The Court has rejected Defendants' challenges to the admissibility of the Savage survey.   Accordingly, the Court declines to exclude Mr. Weinstein's third approach based on his reliance on Dr. Savage's survey.

Defendants also argue that the third approach should be excluded because Mr.

27

Weinstein applies Dr. Savage's survey results to both smartphones and tablets even though the survey was specific to smartphones.  (15-cv-1735-Doc. No. 275 at 21; 15-cv-738-Doc. No. 307 at 17.)  The Court disagrees.  Although the survey focused on smartphones, the purpose of the survey was to establish a willingness to pay for the allegedly infringing features.  (See 15-cv-1735-Doc. No. 293-4, Ex. 8.)  Thus, Defendants' contention that Mr. Weinstein improperly applied Dr. Savage's survey results to the accused tablets is an issue for cross-examination, not exclusion.

Defendant Apple also argues that the third approach should be excluded because Mr. Weinstein improperly assumes that Apple and its carriers would split revenue from the accused products.  (15-cv-1735-Doc. No. 275 at 20-21.)  But disagreements with the factual assumptions underlying an expert's conclusions "go to the weight to be afforded the testimony and not its admissibility."  ActiveVideo, 694 F.3d at 1333.  Accordingly, the Court denies without prejudice Defendants' motions to exclude Mr. Weinstein's third approach.

### iv.    Approach 4

Defendants argue that Mr. Weinstein's fourth approach should be excluded because that approach is based on the flawed assumption that handset manufacturers would be willing share carrier infrastructure costs.  (15-cv-1735-Doc. No. 275 at 21-22; 15-cv-1738-Doc. No. 307 at 17-18.)  In response, Odyssey argues that Mr. Weinstein's fourth approach is admissible as it is based on Defendants' own assumption that a non-infringing alternative exists: that they could increase uplink speed without infringing the patents-in-suit by increasing the density of base stations.  (15-cv-1735-Doc. No. 293 at 15-16.)  Odyssey argues that Defendants' apparent assumption that carriers would be willing to bear the entire infrastructure costs of increasing the density of base stations to provide Defendants with a non-infringing alternative is flawed.  (Id. at 16.)  Odyssey argues that it is reasonable for Mr. Weinstein to assume that Defendants would have to bear some, but not all, of the

28

costs associated with implementing their non-infringing alternative.  (Id. at 15.)

The Court rejects Defendants' challenges to Mr. Weinstein's fourth approach, and agrees with Odyssey that the approach is admissible.  Disagreements with the factual assumptions underlying an expert's conclusions "go to the weight to be afforded the testimony and not its admissibility."  ActiveVideo, 694 F.3d at 1333.  Accordingly, the Court denies without prejudice Defendants' motions to exclude Mr. Weinstein's fourth approach.

> v.    Apportionment

Defendants Samsung and LG argue that Mr. Weinstein's opinions and testimony should be excluded because he failed to properly apportion the patented features in his analysis.  (15-cv-1738-Doc. No. 307 at 18-20; 15-cv-1743-Doc. No. 254 at 21-23.)  "[A] patentee 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.'"  VirnetX, 767 F.3d at 1326 (quoting Garretson v. Clark, 111 U.S. 120, 121 (1884)).  In their motions, Defendants do not contend that Mr. Weinstein failed to perform an apportionment.  Indeed, Odyssey correctly argues that Mr. Weinstein performed several apportionments in his damages analysis.  (15-cv-1735-Doc. No. 293 at 1-4.)  Rather, Defendants contend that the apportionments Mr. Weinstein performed were insufficient because he failed to consider certain factors, which Defendants contend are important to the apportionment analysis.  (15-cv-1738-Doc. No. 307 at 19-20.)  Defendants' disagreement with the considerations underlying Mr. Weinstein's apportionment analysis "go to the weight to be afforded the testimony and not its admissibility."  ActiveVideo, 694 F.3d at 1333; see Apple, 757 F.3d at 1315 ("[Q]uestions regarding which facts are most relevant or reliable to calculating a reasonable royalty are 'for the jury.'").  Accordingly, the Court declines to exclude Mr. Weinstein's reports and testimony on the grounds that

15-cv-01735-H-RBB

1  he failed to properly apportion the patented features.

2          vi.    Running Royalty

3          Defendant Apple argues that the Court should exclude Mr. Weinstein's opinion that

4  the hypothetical negotiation at issue between Odyssey and Apple would result in a running

5  royalty.   (15-cv-1735-Doc. No. 275 at 22-23.)   Apple argues that this opinion is

6  inadmissible because the evidence in the record shows that Apple only agrees to lump-sum

7  licenses.  (Id.)  "A hypothetical negotiation can result in either a lump-sum license or a

8  running royalty license."  DataQuill Ltd. v. High Tech Computer Corp., 887 F. Supp. 2d

9  999, 1020 (S.D. Cal. 2011) (citing Lucent, 580 F.3d at 1326).

10         In his expert report in the Apple case, Dr. Weinstein opines that the parties would

11  have agreed to a running royalty license.  (15-cv-1735-Doc. No. 293-5, Ex. 9 ¶¶ 233-39.)

12  Apple may disagree with this conclusion.   But "'the test under Daubert is not the

13  correctness of the expert's conclusions.'"  Primiano, 598 F.3d at 564; see Apple, 757 F.3d

14  at 1314 ("A judge must be cautious not to overstep its gatekeeping role and . . . evaluate

15  the correctness of conclusions.").  Further, Apple's disagreement with the facts underlying

16  that opinion "go to the weight to be afforded the testimony and not its admissibility."

17  ActiveVideo, 694 F.3d at 1333.  Accordingly, the Court declines to exclude Mr.

18  Weinstein's running royalty opinion.[18]

19         vii.    Conclusion

20         "At their core, [Defendants'] disagreements are with the conclusions reached by

21  [Mr. Weinstein] and the factual assumptions and considerations underlying those

22

23  [18]    In addition, the Court denies Apple's motion to exclude Weinstein's opinions on Apple's pre-
24  release testing contained in Mr. Weinstein's supplemental expert report.  (15-cv-1735-Doc. No. 275 at
    23-24.)  The Court agrees with Odyssey that the supplemental report is timely based on the fact that
25  Apple only made the 30(b)(6) witness Sachin Sane available for deposition on July 22, 2016.  (15-cv-
    1735-Doc. No. 293 at 25.)  Further, Apple has failed to show that is has been prejudiced by the
26  supplemental report.  In addition, the Court rejects Apple's challenges to the opinions contained in the
27  supplemental report.

28

30

15-cv-01735-H-RBB

conclusions, not his methodology.  These disagreements go to the weight to be afforded the testimony and not its admissibility." <u>ActiveVideo</u>, 694 F.3d at 1333.  Accordingly, the Court denies Defendants' motions to exclude the expert reports and testimony of Mr. Weinstein without prejudice to a contemporaneous objection at trial.

### **<u>Conclusion</u>**

For the reasons above, the Court denies Plaintiff's <u>Daubert</u> motions without prejudice and denies Defendants' <u>Daubert</u> motions without prejudice.

**IT IS SO ORDERED.**

DATED: September 14, 2016

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

31

15-cv-01735-H-RBB